## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CENTRAL SANTA LUCIA, L.C.      )
          )
      Plaintiff,       )   C. A. No.
          )
    v.          )   **DEMAND FOR JURY TRIAL**
          )
EXPEDIA GROUP, INC.,       )
          )
          )
      Defendant.     )

## COMPLAINT

Plaintiff Central Santa Lucía, L.C. ("Central Santa Lucia"), by and through counsel, as and for its Complaint against Defendant Expedia Group, Inc. ("Expedia") hereby alleges:

### PRELIMINARY STATEMENT

1.     Central Santa Lucia brings this action to recover damages and interest under the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, codified at 22 U.S.C. § 6021, *et seq.* (the "Helms-Burton Act" or "Act") against Expedia for trafficking in property that was confiscated by the Cuban Government on or after January 1, 1959, and as to which Central Santa Lucia owns claims.

2.     The Helms-Burton Act was enacted in 1996 to preserve the "fundamental right to own and enjoy property which is enshrined in the United States Constitution" and to provide a remedy for the "wrongful confiscation or taking of property belonging to United States nationals by the Cuban Government, and the subsequent exploitation of this property at the expense of the rightful owner."  22 U.S.C. § 6081.

3.    Congress expressly found that "[s]ince Fidel Castro seized power in Cuba in 1959 … he has trampled on the fundamental rights of the Cuban people; and … through his personal despotism, he has confiscated the property of" Cuban citizens, U.S. nationals, and Cubans who have sought asylum in the United States.  22 U.S.C. § 6081.  Recent events, including mass protests, have shown that the Cuban Government—even after the death of Fidel Castro—continues to oppress and deprive its people.

4.    Congress announced that it is "the foreign policy of the United States … to bring democratic institutions to Cuba through the pressure of a general economic embargo … and … to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government."  22 U.S.C. § 6081.

5.    The Cuban Government has allowed foreign companies, such as Expedia, to benefit and profit from the use of confiscated property.   "This 'trafficking' in confiscated property provides badly needed financial benefit, including hard currency, oil, and productive investment and expertise, to the current Cuban Government and thus *undermines the foreign policy of the United States*."  22 U.S.C. § 6081 (emphasis added).

6.    In addition, for most of the period since 1982, the U.S. Department of State has designated Cuba a State Sponsor of Terrorism.  Currently, only three other countries join Cuba on that list—North Korea, Iran, and Syria.  Most recently, the State Department explained Cuba's inclusion on the list as follows:

> For decades, the Cuban government has fed, housed, and provided medical care for murderers, bombmakers, and hijackers, while many Cubans go hungry, homeless, and without basic medicine.  Members of the National Liberation Army (ELN), a U.S.-designated Foreign Terrorist Organization, traveled to Havana to conduct peace talks with the Colombian government in 2017.  Citing peace negotiation protocols, Cuba has refused Colombia's requests to extradite ten ELN leaders living in Havana after the group claimed responsibility for the January 2019 bombing of a Bogota police academy that

killed 22 people and injured more than 87 others.

Cuba also harbors several U.S. fugitives from justice wanted on or convicted of charges of political violence, many of whom have resided in Cuba for decades.  For example, the Cuban regime has refused to return Joanne Chesimard, on the FBI's Most Wanted Terrorists List for executing New Jersey State Trooper Werner Foerster in 1973; Ishmael LaBeet, convicted of killing eight people in the U.S. Virgin Islands in 1972; Charles Lee Hill, charged with killing New Mexico state policeman Robert Rosenbloom in 1971; and others.

Cuba returns to the SST list following its broken commitment to stop supporting terrorism as a condition of its removal by the previous administration in 2015.  On May 13, 2020, the State Department notified Congress that it had certified Cuba under Section 40A(a) of the Arms Export Control Act as "not cooperating fully" with U.S. counterterrorism efforts in 2019.

In addition to the support for international terrorism, the Cuban regime engages in a range of malign behavior across the region.  The Cuban intelligence and security apparatus has infiltrated Venezuela's security and military forces, assisting Nicholas Maduro to maintain his stranglehold over his people while allowing terrorist organizations to operate.  The Cuban government's support for FARC dissidents and the ELN continues beyond Cuba's borders as well, and the regime's support of Maduro has created a permissive environment for international terrorists to live and thrive within Venezuela.

U.S. Department of State Press Statement (Jan. 11, 2021).

## PARTIES

### I.    Plaintiff

7.    Plaintiff Central Santa Lucía, L.C. is a limited liability company formed under the laws of Florida ("Central Santa Lucía").  It is located at 1528 Palermo Avenue, Coral Gables, FL 33134.  Central Santa Lucia is a special purpose Florida limited liability company formed in 1996 in anticipation of the Helms-Burton Act being signed into law.  American citizen members of the Sanchez Hill Family transferred their claims to Central Santa Lucia on March 7, 1996, before the Helms-Burton Act became effective on March 12, 1996.  Central Santa Lucia holds 67.31123% of

the claims of the Sanchez Hill family members who are the legitimate owners of the Confiscated Property.

8.    Central Santa Lucia is a United States national as defined by 22 U.S.C. § 6082(15)(B) that is organized under the laws of the State of Florida and has its principal place of business in the United States.

**II.    Defendant**

9.    Defendant Expedia Group, Inc. ("Expedia Group") is a Delaware corporation with its principal place of business in Seattle, Washington.  Expedia Group is an online travel company operating a broad multi-product supply portfolio with over 2.9 million lodging properties available in approximately 880,000 hotels.  It operates over twenty globally relevant brands and over 200 travel websites.

10.    Expedia Group operates many retail brands including: Brand Expedia (a leading full-service online travel brand); Hotels.com (lodging); Vrbo (alternative accommodations); Orbitz (online travel); CheapTickets (budget travel site); Travelocity (online travel); Hotwire (value-oriented travel); and trivago (travel metasearch and referrals).

11.    In its most recent 10-K filing with the Securities and Exchange Commission filed on February 11, 2022, Expedia Group described its business operations in this manner:

> Much of our strategy leading up to the COVID-19 pandemic focused on our brands competing aggressively for share all the [sic] around the world, each with their own offerings and benefits. While this avoided potential disruptions from integrating the acquired brands, it also created certain complexities and inefficiencies over time.
>
> As a result, in 2020, we shifted to a platform operating model, which enabled us to deliver more scalable services and operate more efficiently. For example, we now manage our marketing investments holistically across the brand portfolio, allowing us to optimize results better, while running on a unified marketing technology platform has improved our performance marketing capabilities. More recently, we shifted to a more unified brand strategy within our Retail business where we have a combined team making

decisions across all our brands. These changes were made in an effort to simplify and streamline our organization, improve our cost structure, and the operation of our business.

12.    In its 10-K, it further described its business strategy:

During 2020, Expedia Group shifted to a platform operating model with more unified technology, product, data engineering and data science teams building services and capabilities that are leveraged across our business units to serve our end customers and provide value-add services to our travel suppliers. This model enables us to deliver more scalable services and operate more efficiently. All of our transaction-based businesses share and benefit from our platform infrastructure, including customer servicing and support, data centers, search capabilities and transaction processing functions, including payment processing and fraud operations.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Central Santa Lucía's claims arise under the laws of the United States, specifically Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081–85.

14.     The amount in controversy in this action exceeds $50,000, exclusive of interest, treble damages, court costs, and reasonable attorneys' fees.  22 U.S.C. § 6082(b).

15.    Defendant Expedia Group, Inc. is subject to the personal jurisdiction of this Court because it is incorporated in Delaware within this judicial district.

16.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Expedia Group resides in this District.

17.    Contemporaneous with this filing, Central Santa Lucia has paid the special fee for filing an action under Title III of the Helms-Burton Act, 22 U.S.C. § 6082(i).

## THE HELMS-BURTON ACT

### I.    Background

18.    In 1996, the U.S. Congress passed the Helms-Burton Act, and President Bill Clinton signed the Act into law on March 12, 1996.  The Act had several goals, including to "protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime," 22 U.S.C. § 6022(6).  Further, Congress determined that "'trafficking' in confiscated property provides badly needed financial benefit, including hard currency, oil, and productive investment and expertise to the … Cuban Government and thus undermines the foreign policy of the United States," which foreign policy includes "protect[ing] claims of United States nationals who had property wrongfully confiscated by the Cuban Government." 22 U.S.C. § 6081(6).

19.    Congress found that international law "lacks fully effective remedies" for the "unjust enrichment from the use of wrongfully confiscated property by governments and private entities at the expense of the rightful owners of the property." 22 U.S.C. § 6081(8).

20.    Congress thus decided that "the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits — from economically exploiting Castro's wrongful seizures." 22 U.S.C. § 6081(11).  The result was Title III of the Helms-Burton Act—"Protection of Property Rights of United States Nationals"— which imposes liability on persons trafficking in property confiscated from a U.S. national (including property confiscated from a person who became a U.S. national before March 12, 1996) by the Cuban Government on or after January 1, 1959, and which authorizes a private right of action for damages against such traffickers.  *See* 22 U.S.C. § 6082.

21.     The Helms-Burton Act authorizes the President (or his delegate, the Secretary of State) to suspend for periods of up to six months at a time (1) the Title III private right of action, 22 U.S.C. § 6085(c); and/or (2) the effective date of Title III of August 1, 1996, 22 U.S.C. § 6085(b).  Although Title III's creation of liability as to those engaged in trafficking has remained in force since August 1996, the ability of any potential plaintiff to bring a private right of action for Title III violations had been suspended by several Presidents until May 2019, when President Donald Trump allowed the suspension of Title III's private right of action to lapse, thereby allowing such actions to proceed.

22.     Although President Clinton suspended the private right of action under Title III on July 16, 1996, for six months, the August 1, 1996, effective date was never suspended.  Title III of the Act therefore came into effect on August 1, 1996.  Starting on that date, traffickers in confiscated property were liable to U.S. nationals with claims to that property but could not be sued while the private right of action remained suspended.

23.     President Clinton and subsequent administrations renewed the suspension of the Title III private right of action, typically for six months at a time, by decision of the President or Secretary of State.  There was never any guarantee that additional suspensions of the private right of action would be granted indefinitely into the future, and the operative provisions of the Act have remained in effect continuously since 1996.

24.     It should therefore have come as no surprise to traffickers that President Trump would allow the suspension of Title III's private right of action to lapse.  As early as November 2018, then White House National Security Advisor John Bolton stated that the Trump Administration planned to give the continuing of the Title III suspension "very serious review."  In January 2019, then Secretary of State Michael Pompeo announced that the Trump

Administration was reviewing whether further suspensions of Title III were justifiable or necessary.

25.     On April 17, 2019, Secretary of State Pompeo announced that the Trump Administration would no longer suspend the right to bring an action under Title III, effective May 2, 2019.  On May 2, 2019, upon the expiration of the last suspension, the right to bring an action under Title III was activated.

**II.      The Helms-Burton Act's Private Right of Action**

26.     Title III of the Helms-Burton Act, which took effect in August 1996, imposes liability against persons who "traffic" in property confiscated by the Cuban Government on or after January 1, 1959, the claims to which are owned by persons who became U.S. nationals after the confiscation of their property and before March 12, 1996.  Specifically, the Act provides:

> (1) Liability for trafficking. — (A) Except as otherwise provided in this section, any person that, after the end of the 3-month period beginning on the effective date of this title, traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property for money damages...

22 U.S.C. § 6082(a)(1).

27.     The Act defines "person" as "any person or entity, including any agency or instrumentality of a foreign state."  22 U.S.C. § 6023(11).

28.     The Act defines "United States national" to include "any United States citizen or any other legal entity which is organized under the laws of the United States, or of any State, the District of Columbia, or any commonwealth, territory, or possession of the United States, and which has its principal place of business in the United States."  22 U.S.C. § 6023(15).

29.     The Act adopts the definition of "agency or instrumentality of a foreign state" under 28 U.S.C. § 1603(b), *see* 22 U.S.C. § 6023(1) ("Agency or Instrumentality of a Foreign State. —

The term 'agency or instrumentality of a foreign state' has the meaning given that term in section 1603(b) of title 28, United States Code.").

30.    A person "traffics" in confiscated property if that person "knowingly and intentionally":

>    (i)    sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
>
>    (ii)    engages in a commercial activity using or otherwise benefiting from confiscated property, or
>
>    (iii)    causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person, without the authorization of any United States national who holds a claim to the property
>
>    without the authorization of any United States national who holds a claim to the property.

22 U.S.C. § 6023(13).

31.    The Act defines "property" as "any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest." 22 U.S.C. § 6023(12).

32.    The Act defines "confiscated" in relevant part as:

>    [T]he nationalization, expropriation, or other seizure by the Cuban Government of ownership or control of property, on or after January 1, 1959 —
>
>    (i)    without the property having been returned or adequate and effective compensation provided; or

> (ii)    without the claim to the property having been settled pursuant to an international claims settlement agreement or other mutually accepted settlement procedure.

22 U.S.C. § 6023(4)(A).

33.    The term "knowingly" under the Act means "with knowledge or having reason to know."  22 U.S.C. § 6023(9).

34.    The Helms-Burton Act adopts the definition of "commercial activity" under 28 U.S.C. § 1603(d), *see* 22 U.S.C. § 6023(3), which defines the term as "either a regular course of commercial conduct or a particular commercial transaction or act.  The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).

35.    Under the Act,

> (A)    The term "Cuban Government" includes the government of any political subdivision of Cuba, and any agency or instrumentality of the Government of Cuba.

> (B)    For purposes of subparagraph (A), the term "agency or instrumentality of the Government of Cuba" means an agency or instrumentality of a foreign state as defined in section 1603(b) of title 28, United States Code, with each reference in such section to "a foreign State" deemed to be a reference to "Cuba."

22 U.S.C. § 6023(5).

36.    Since August 1, 1996, when Title III of the Helms-Burton Act went into effect, it has been clear that companies doing business with Cuba or in Cuba incurred potential liability under the Helms-Burton Act if they knowingly and intentionally traffic in confiscated property. Companies doing business in and/or with Cuba have therefore been on notice since August 1, 1996, that they would face potential liability under the Helms-Burton Act for trafficking in confiscated property.

### III.    Remedies Under the Helms-Burton Act's Private Right of Action

37.    A person who "traffics" in a U.S. national's confiscated property under the Helms-Burton Act is liable to a plaintiff for money damages equal to:

> (i)    the amount which is the greater of —
> …
> (II) the amount determined [by a court-appointed special master], plus interest; or
>
> (III) the fair market value of that property, calculated as being either the current value of the property, or the value of the property when confiscated plus interest, whichever is greater[.]

22 U.S.C. § 6082(a)(1)(A)(i).

38.    Pre-filing interest under the Act accrues from "the date of confiscation of the property involved to the date on which the action is brought." 22 U.S.C. § 6082(a)(1)(B). Interest is calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System" for the calendar week preceding the date of confiscation and compounded annually. 28 U.S.C. § 1961(a) (incorporated by reference in 22 U.S.C. § 6082(a)(1)(B)).

39.    A person who "traffics" in a U.S. national's confiscated property under the Act is also liable for plaintiffs' court costs and reasonable attorneys' fees. *See* 22 U.S.C. § 6082(a)(1)(A)(ii).

40.    The Act provides for "Increased Liability"

> … If the claimant in an action under this subsection… provides, after the end of the 3-month period described in paragraph (1) notice to —
>
> (i)    a person against whom the action is to be initiated, or
>
> (ii)    a person who is to be joined as a defendant in the action,
>
> at least 30 days before initiating the action or joining such person as a defendant, as the case may be, and that person, after the end of the 30-day

period beginning on the date the notice is provided, traffics in the confiscated property that is the subject of the action, then that person shall be liable to that claimant for damages computed in accordance with subparagraph (C).

*See* 22 U.S.C. § 6082(a)(3)(B) and (a)(3)(C)(ii) (allowing damages "3 times the amount determined applicable under paragraph (1)(A)(i)").

## FACTUAL ALLEGATIONS

### I.    The Confiscated Property

41.    The Confiscated Property includes real property located in or near Holguin province, Cuba that, until it was confiscated by the Cuban government in 1960, was owned by Santa Lucia Company, S.A., a Cuban corporation.  The Confiscated Property consists of Santa Lucia Company, S.A. and approximately 102,300 acres of land, including thirty-five miles of oceanfront property that in some parts extended 8 miles inland.  The following beaches (as they are currently known) are located on the Confiscated Property:  Playa Blanca; Playa Pesquero; Playa Yuraguanal; Playa Esmeralda; and Playa Guardalavaca.

42.    Figure 1 below is a Google Maps aerial picture of the Confiscated Property.  The below red line is an approximation of the boundaries of the Confiscated Property.



43.

44.    A number of luxury hotels are currently located on the Confiscated Property including, but not limited to:  Hotel Brisas Guardalavaca; Club Amigo Atlantico-Guardalavaca; Paradisus Rio de Oro; Sol Rio de Luna y Mares; Hotel Turquesa Holguin; Fiesta Americana Costa Verde; Hotel Playa Costa Verde; Playa Pesquero Resort Suite and Spa Hotel; Iberostar Selection Holquin; Villa Don Lino; Memories Holquin; and the Iberostar Selection Almirante.

## II.    Cuba's Confiscation of the Confiscated Property

45.    The Confiscated Property was confiscated without compensation by Cuban Law 890, issued on October 13, 1960, which confiscated Santa Lucia Company, S.A., the operator of the sugar mill then known as Central Santa Lucía, as well as all associated rights, factories, warehouses, and other property such as the land described above.

46.    More specifically, on October 13, 1960, the Cuban Government published Law 890 which provided, in part that:

> Whereas: it is the duty of the Revolutionary Government to take the measures required by the circumstances set forth in the foregoing Whereas and to adopt formulas that will definitely eliminate the economic power of the privileged interests that conspire against the people, proceeding to the nationalization of the large industrial and commercial enterprises that have not adapted nor will ever be able to adapt to the revolutionary reality of our Homeland, and at the same time to provide effective guarantees and to facilitate by various means the normal development of all those small and medium enterprises whose interests can and should coincide with the great interests of the Nation.

> Whereas: the nationalization must be verified through the forced expropriation of said industrial and commercial companies, as authorized by Article 24 of the Fundamental Law of the Republic.

> Therefore, in use of the faculties that are conferred on it, the Council of Ministers resolves to dictate the following,

### Law No. 890

> Article 1.—The nationalization is provided through the forced expropriation of all industrial and commercial companies, as well as

factories, warehouses, storehouses and other assets and rights that are part of them, owned by the following natural or legal persons:

**GROUP "A"**
**Sugar Mills**
\*       \*       \*

101. —Santa Lucía Company, S.A., operator of the "Santa Lucía" sugar mill.

\*       \*       \*

Article 2.— Therefore, all assets, rights and shares of the companies listed in Article 1 of this Law are awarded to the Cuban State, transferring all their assets and liabilities and, consequently, the State is declared to be subrogated in the place and degree of the natural or legal persons who own the aforementioned companies.

\*       \*       \*

Article 5. The expropriations and consequent nationalizations and awards in favor of the Cuban State of the companies indicated in Article 1 of this Law, are extended to their subsidiary or collateral companies, which will be carried out through resolutions issued by the heads of the State agencies or departments entrusted with the direction and administration of the companies expressly expropriated by this Law.

Law 890, published in Gaceta Oficial (Oct. 13, 1960).

47.     The Confiscated Property has never been returned nor has adequate and effective compensation ever been provided to Plaintiff or to any members of the Sanchez Hill Family.  Nor have Plaintiff's claims or any claims of members of the Sanchez Hill Family to the Confiscated Property ever been settled pursuant to an international claims settlement agreement or other settlement procedure.

48.     Plaintiff never abandoned its interest in and claims to the Confiscated Property, nor have members of the Sanchez Hill Family ever abandoned their interests.

**III.     Acts of Trafficking**

49.     Travel suppliers distribute and market products through Expedia Group's desktop and mobile offerings, as well as through alternative distribution channels.

50.     Over the past year, Expedia Group shifted to a platform operating model with more centralized technology, product, data engineering and data science teams building services and capabilities across its business units.  All of its transaction-based businesses share and benefit from its platform infrastructure, including customer servicing and support, data centers, search capabilities and transaction processing functions, including payment processing and fraud operations.

51.     Expedia Group's systems infrastructure and web and database servers are housed mainly in the United States.

52.     Expedia Group makes travel products and services available on a stand-alone and package basis, primarily through three different business models:  the merchant model; the agency model; and the advertising model.

53.     Under the merchant model, Expedia Group facilitates the booking of hotel rooms, alternative accommodations, airline seats, car rentals and destination services from its travel suppliers, and Expedia Group is the merchant of record for such bookings.  Customers pay Expedia Group in advance under this model, referred to as "Expedia Collect."  The merchant model accounted for 63% of Expedia Group's revenue in 2020.

54.     Under the agency model, Expedia Group facilitates travel bookings and acts as the agent in the transaction, passing reservations booked by the traveler to the relevant travel provider with Expedia Group receiving commissions or ticketing fees from the travel supplier and/or the traveler.  Customers pay at the time of stay under this model, referred to as "Hotel Collect."  The agency model accounted for 24% of Expedia Group's revenue in 2020.

55.     Under the advertising model, Expedia Group offers advertisers various media and advertising offerings across its transaction-based websites, as well as its majority-owned metasearch site, trivago.  Advertising accounted for 13% of Expedia Group's revenue in 2020.

56.     On May 23, 2017, Expedia Group announced that it had started offering online booking for hotels in Cuba.  Veronica Vega, Expedia Area Manager for the Caribbean, stated that, "I see a lot of potential.  We are talking about the largest country in the Caribbean with significant hotel expansion plans," and that, "We are very excited about being able to facilitate travel and give people the independence to select their itinerary." [1]

57.     Expedia Group entered into a settlement agreement with the Office of Foreign Assets Controls ("OFAC") on May 17, 2019, regarding 2,221 potentially non-compliant Cuba-related travel transactions that occurred between 2011-2014.

58.     Cuba's economy is largely dependent on the tourism industry which accounted for 10.6% of its GDP in 2019.  Cuba is one of the most popular tourist destinations in the Caribbean.

59.     The Cuban tourism and hotel market has been an integral part of Cuba's economy and has been on a growth track.  Although the COVID-19 pandemic resulted in a drop in tourist arrivals, the market is expected to achieve a compounded annual growth rate of 17.21% over the period 2020-2026 and reach a value of $8.15 billion by the year 2026.

60.     The Cuban government's "2030 Vision Plan" recognized the centrality of tourism to the nation's future, and the Cuban government has made it a "strategic sector" and has aimed at

---

[1] S. Marsh, "Expedia Begins Offering Online Booking for Hotels in Cuba," Reuters Technology News (May 23, 2017), https://www.reuters.com/article/us-cuba-usa-expedia/expedia-begins-offering-online-booking-for-hotels-in-cuba-idUSKBN18J1ID

achieving rapidly increasing revenues from the sector. Part of the strategy is greater use of the internet and social media to promote Cuba as a destination and to generate more online sales.

61.    Expedia Group websites still facilitate online booking for hotels in Cuba and Expedia Group has never announced a withdrawal from the Cuban market.

62.    Expedia Group websites advertise hotels on the Confiscated Property and enable the hotels, Grupo de Administración Empresarial S.A. ("GAESA"), and the Cuban government to normalize the appearance of the Cuban military's involvement in the tourism and hotel industry in Cuba.[2]

63.    Expedia Group websites facilitate the payment of hard currency to the Cuban government and military, including GAESA.

64.    Expedia Group websites facilitate the receipt of hard currency for tourists booking hotel rooms in Cuba and thereby encourage, facilitate, and enable foreign investors to enter into joint ventures in Cuba using property and assets which were confiscated from United States nationals.

65.    Expedia Group websites facilitate the receipt of hard currency from tourists booking hotel rooms in Cuba and thereby encourage, facilitate and enable foreign investors to enter into agreements to manage hotel properties in Cuba that benefit from property and assets which were confiscated from United States nationals.

66.    Expedia Group websites sell hotel room rentals for one or more nights and therefore Expedia traffics in the Confiscated Property under the Helms-Burton Act.

---

[2] GAESA is a Cuban military-controlled umbrella enterprise with interests in tourism and other sectors of Cuba's economy.  https://home.treasury.gov/news/press-releases/sm1217

67.     Expedia Group websites broker hotel room rentals for one or more nights and therefore Expedia traffics in the Confiscated Property under the Helms-Burton Act.

68.     Expedia Group websites lease hotel rooms for one or more nights and therefore Expedia traffics in the Confiscated Property under the Helms-Burton Act.

69.     Expedia Group companies engage in commercial activities using or otherwise benefitting from the Confiscated Property, because the value of the hotel rooms booked is directly tied to the location of the hotel in which it is booked – a hotel room on the beach in Holguin province is more valuable than a hotel booked 8 miles inland.

70.     Expedia Group benefits from being associated with hotel properties as beautiful as those that exist in Holguin province and therefore the listing of hotel properties in Holguin province on websites associated with Expedia Group causes Expedia Group to benefit from commercial activities using or otherwise benefitting from the Confiscated Property irrespective of whether a hotel room is ever booked or not.

71.     Expedia Group brands engage in commercial activities that benefit from the Confiscated Properties.

72.     Expedia Group is profiting from trafficking in the Confiscated Property by or through its retail brands that advertise, publicize, and/or book rooms at hotel properties in Holguin province.

73.     Expedia Group is profiting from trafficking in the Confiscated Property by or through its retail brands that advertise, publicize, and/or facilitate the booking of rooms at hotel properties in Holguin province.

74.     Expedia Group does not list hotels on the Expedia Group websites for charitable purposes.

75.    To book a hotel through Expedia Group websites, a traveler must create an account. After their stay is over, they will receive an email from an Expedia Group service to sign in and leave a review for the hotel.  This ensures that all reviews are left by verified guests of the hotel and only by those who booked through that travel website.  On Expedia Group websites, the exact date a traveler posts a review is displayed, and the review and basic details of their stay are displayed, *i.e.*, the number of nights stayed, the month, and the year are disclosed (*e.g.*, "Stayed 4 nights in September 2019").

76.    An examination of the Expedia Group websites shows hundreds of verified traveler reviews for stays at hotels located on the confiscated property.  For example, travelers left reviews on the Brand Expedia website for the hotel Brisas Guardalavaca over ninety times, many of the reviews posted within the last two years.  Travelers also left over fifty-five reviews on the Brand Expedia site for the Iberostar Holguin, many also within the last two years, and five reviews for the Villa Don Lino.  Brand Expedia has taken down information from its website relating to Cuban hotels, so there are likely more reviews than the ones described in this paragraph.

77.    Central Santa Lucia never authorized Expedia Group, nor any other person, to use or benefit from the Confiscated Property nor has Central Santa Lucia received any payments for use of the Confiscated Property.  Nor has any member of the Sanchez Hill Family ever authorized Expedia Group or any other person, to use or benefit from the Confiscated Property or received any payments for use of the Confiscated Property.

78.    Because Expedia Group never obtained the authorization of Central Santa Lucia or any members of the Sanchez Hill Family for these acts of trafficking, Central Santa Lucia was injured by Expedia Group's acts of trafficking in the Confiscated Property to which Central Santa Lucia owns claims.

79.    Central Santa Lucia has been injured by Expedia Group's unauthorized acts of trafficking in the confiscated property to which Central Santa Lucia owns claims because, *inter alia*:

(a)    Expedia Group is profiting without obtaining consent from or paying adequate compensation to Central Santa Lucía;

(b)    Central Santa Lucia is not receiving the benefit of its interests in the Confiscated Property;

(c)    Expedia Group is profiting without obtaining authorization or paying adequate compensation to Central Santa Lucia for authorization to traffic in the Confiscated Property;

(d)    Expedia Group is profiting or otherwise benefiting from trafficking in the Confiscated Property by or through others without obtaining authorization from, or paying adequate compensation to, Central Santa Lucía;

(e)    Expedia Group's trafficking in the Confiscated Property has undermined Central Santa Lucía's rights to compensation for the Confiscated Property;

(f)    Expedia Group has profited from its use of the Confiscated Property at Central Santa Lucía's expense;

(g)    Expedia Group has denied Central Santa Lucia the ability to obtain economic rent that could have been negotiated for in exchange for its authorization to Expedia to traffic in the Confiscated Property;

(h)    Expedia Group has appropriated from Central Santa Lucia the leverage from the Helms-Burton Act that Central Santa Lucia would have had on the Cuban Government to negotiate compensation for its Confiscated Property;

(i)    Expedia Group has injured Central Santa Lucia by trafficking in the Confiscated Property without Central Santa Lucía's authorization and without making any payment of compensation to Central Santa Lucia because in the Helms-Burton Act, Congress provided the rightful owners of confiscated property with the right to be compensated traffickers that economically exploit the confiscated property;

(j)    Expedia Group has injured Central Santa Lucia by trafficking in the particularized Confiscated Property to which Central Santa Lucia owns claims without seeking or obtaining Central Santa Lucía's authorization to traffic in that particularized Confiscated Property, and as a result Expedia Group's failure to do so has resulted in concrete and particularized monetary harm and injury to Central Santa Lucía; and

(k)    The harms and injuries suffered by Central Santa Lucia because of Expedia Group's failure to obtain Central Santa Lucía's authorization to traffic in the Confiscated Property have a close relationship to traditionally recognized common law actions such as unjust enrichment, trespass, trespass to chattels, and conversion.

(l)    There is a direct causal link between Central Santa Lucía's injuries from the Cuban Government's confiscation of the Confiscated Property and Expedia Group's unjust enrichment, trespass, trespass to chattels, and/or conversion from Expedia Group's commercially beneficial use of the Confiscated Property without Central Santa Lucía's authorization.

(m)    Expedia Group's trafficking in the Confiscated Property without Central Santa Lucía's authorization has caused a concrete injury to Central Santa Lucia that is traceable to Expedia Group and has a close relationship to harms traditionally

recognized providing a basis for a lawsuit in American courts – such as unjust enrichment, trespass, trespass to chattels and conversion.

## COUNT I
## CLAIM FOR DAMAGES
## TITLE III OF THE HELMS-BURTON ACT

80.    Central Santa Lucia incorporates by reference paragraphs 1 through 79, as if fully stated herein.

81.    Plaintiff Central Santa Lucia is a U.S. national as defined by 22 U.S.C. § 6023(15)(B)

82.    This case is brought pursuant to Title III of the Helms-Burton Act, 22 U.S.C. § 6082.

83.    Expedia Group did traffic, as the term "traffic" is defined in 22 U.S.C. § 6023(13), in the Confiscated Property without the authorization of Central Santa Lucia which owns claims to the Confiscated Property.  Expedia Group is therefore liable to Central Santa Lucia under the Helms-Burton Act.

84.    Expedia Group also knowingly and intentionally participated in, benefitted from, and profited from the various members of the Expedia Group's trafficking in the Confiscated Property without the authorization of Central Santa Lucía.

85.    Expedia Group engaged in a commercial activity using or otherwise benefitting from the Confiscated Property.

86.    Expedia Group also causes, directs, participates in, or profits from trafficking by the various members of the Expedia Group in the Confiscated Property.

87.    Expedia Group did not seek nor obtain Central Santa Lucía's authorization to traffic in the Confiscated Property.

88.    A notice letter was sent to Expedia Group on November 24, 2021, and received by Expedia on November 29, 2021.

89.    Expedia Group's knowing and intentional conduct regarding the Confiscated Property constitutes trafficking without authorization as defined in 22 U.S.C. § 6023(13).

90.    As a result of Expedia Group's trafficking in the Confiscated Property, Expedia Group is liable to Central Santa Lucia for all money damages allowable under 22 U.S.C. § 6082(a) including, but not limited to, those equal to:

a.    The amount which is the greater of: … (i) the amount determined by a special master pursuant to 22 U.S.C. § 6083(a)(2); or (ii) the "fair market value" of the Confiscated Property, plus interest;

b.    Three times the amount determined above (treble damages);

c.    Prejudgment interest; and

d.    Court costs and reasonable attorneys' fees, and expenses.

### REQUEST FOR RELIEF

WHEREFORE, Central Santa Lucia demands judgment against Expedia Group as follows:

A.    Awarding damages as allowed by law including treble damages and pre-filing interest as provided by the Act;

B.    Awarding prejudgment interest as allowed by law on any amounts awarded;

C.    Awarding attorneys' fees, costs, and expenses; and

D.    Awarding such other and further relief as may be just and proper.

### JURY DEMAND

Central Santa Lucia demands a jury trial on all issues so triable, and a trial pursuant to Rule 39(c), Federal Rules of Civil Procedure, as to all matters not triable as of right by a jury.

Dated: March 22, 2022

CROSS & SIMON, LLC

*/s/ Michael L. Vild*
Michael L. Vild (No. 3042)
1105 N. Market Street
Suite 901
Wilmington, Delaware 19801
Tel: (302) 777-4200
Facsimile: (302) 777-4224
mvild@crosslaw.com

BERLINER CORCORAN & ROWE LLP

David A. Baron
(seeking admission *pro hac vice*)
Melvin White
(seeking admission *pro hac vice*)
Laina C. Lopez
(seeking admission *pro hac vice*)
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036-4798
Tel:  (202) 293-5555
Facsimile:  (202) 293-9035
dbaron@bcr-dc.com
mwhite@bcr-dc.com
llopez@bcr-dc.com

FIELDS PLLC

Richard W. Fields
(seeking admission *pro hac vice*)
Martin F. Cunniff
(seeking admission *pro hac vice*)
Edward Han
(seeking admission *pro hac vice*)
1701 Pennsylvania Ave, N.W.
Suite 200
Washington, D.C. 20006
Tel: (833) 382-9816
fields@fieldslawpllc.com
MartinCunniff@fieldslawpllc.com
edhan@fieldslawpllc.com

*Counsel for Plaintiff*